**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| NORMINEL REESE, JR., #468413 | § | |
| VS. | § | CIVIL ACTION NO. 6:07cv131 |
| DIRECTOR, TDCJ-CID | § | |

**MEMORANDUM OPINION and ORDER DISMISSING**

On March 22, 2007, Petitioner, a prisoner confined in the Texas prison system, filed, pursuant to 28 U.S.C. § 2254, this petition for a writ of habeas corpus challenging three prison disciplinary cases. The parties consented to disposition of the case by the undersigned.

**Procedural Background**

*Disciplinary Case Number 20060196449*

On March 20, 2006, Reese was notified that he was being charged with the prison disciplinary offense of refusing to report to his work assignment on March 16, 2006, without a legitimate reason (*Disciplinary Hearing Record* at 1-2), a Level 2, Code 25 violation of the *TDCJ-CID Disciplinary Rules and Procedures for Offenders* (http://www.tdcj.state.tx.us/publications/cid). On March 24, 2006, the disciplinary hearing officer found Reese guilty of the charges and, as a result, assessed his punishment as (1) forty-five days loss of commissary privileges, (2) forty-five days of cell restriction, (3) a reduction in line class, from L1 to L2, and (4) forty-five days loss of good-time credit. *Disciplinary Hearing Record* at 1 and 10.

On April 6, 2006, Reese submitted a step one grievance, initiating grievance case number 2006131923, appealing disciplinary case number 20060196449. *Disciplinary Grievance Record* at 1-2. This grievance was denied on April 17, 2006. *Disciplinary Grievance Record* at 2. On April 28, 2006, Reese submitted a step two grievance, appealing the denial of his step one grievance.

*Disciplinary Grievance Record* at 3-4. This grievance was denied on May 22, 2006. *Disciplinary Grievance Record* at 4.

### *Disciplinary Case Number 20060197735*

On March 21, 2006, Reese was notified that he was being charged with the prison disciplinary offense of creating a disturbance resulting in a significant disruption of institutional operations or breach of institutional security (*Disciplinary Hearing Record* 7735 at 1), a Level 2, Code 23 violation of the *TDCJ-CID Disciplinary Rules and Procedures for Offenders*. On March 24, 2006, the disciplinary hearing officer (DHO) found Reese guilty of the charges and, as a result, assessed his punishment as (1) thirty days loss of personal property privileges and (2) 730 days loss of good-time credit. *Disciplinary Hearing Record* 7735 at 1.

On April 6, 2006 (*Disciplinary Grievance Record* at 2), Reese submitted a step one grievance, initiating grievance case number 2006131920, appealing disciplinary case number 20060197735 (*Disciplinary Grievance Record* at 1). This grievance was denied on May 2, 2006. *Disciplinary Grievance Record* at 2. On May 7, 2006 (*Disciplinary Grievance Record* at 4), Reese submitted a step two grievance, appealing the denial of his step one grievance (*Disciplinary Grievance Record* at 3). This grievance was denied on May 31, 2006. *Disciplinary Grievance Record* at 4.

### *Disciplinary Case Number 20060199420*

On March 22, 2006, Reese was notified that he was being charged with the prison disciplinary offense of refusing or failing to obey a legitimate order from a staff member, a Level 2, Code 24 violation of the TDCJ-CID Disciplinary Rules and Procedures for Offenders, in disciplinary case number 20060191940. *Disciplinary Hearing Record* 9420 at 1-2. On March 24,

2006, the DHO found Reese guilty of the charges and, as a result, assessed his punishment as (1) thirty days loss of personal property privileges, (2) a reduction in line class, from L2 to L3, and (3) sixty days loss of good-time credit. *Disciplinary Hearing Record* 9420 at 1.

On April 6, 2006, Reese submitted a step one grievance, initiating grievance case number 2006131916, appealing disciplinary case number 20060199420. *Disciplinary Grievance Record* at 5-6. This grievance was denied on April 17, 2006. *Disciplinary Grievance Record* at 6. On April 28, 2006, Reese submitted a step two grievance, appealing the denial of his step one grievance. *Disciplinary Grievance Record* at 7-8. This grievance was denied on May 22, 2006. *Disciplinary Grievance Record* at 8.

## Petitioner's Claims

Reese raises the same grounds for relief arising out of all the disciplinary cases. Reese claims that:

1. he was denied the right to attend his disciplinary hearings;

2. he was denied the right to call witnesses and to present evidence;

3. his appointed substitute counsel was ineffective; and

4. he was denied the right to an impartial DHO.

## Standards and Discussion

Absent atypical punishment, a prisoner does not have a basis for a federal lawsuit concerning a disciplinary action. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). Punishment consisting of loss of opportunity to earn good time is not enough to trigger the protection of the Constitution (*Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995), *cert. denied* 517 U.S. 1196 (1996)), even if an inmate is eligible for mandatory supervision (*Malchi v. Thaler*, 211 F.3d 953, 953 (5th Cir. 2000)). Line-class

reduction or remaining at a particular line-class, therefore, does not trigger due process protection.

A loss of commissary privileges for a typical time period does not require due process protections. *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000). The imposition of cell restrictions will not trigger the protection of the Constitution. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).

Because a favorable determination on his property privileges claim would not automatically entitle a state prisoner to accelerated release from prison, a petition for a writ of habeas corpus is an improper method to raise that claim. *See Turner v. Johnson*, 46 F. Supp. 2d 655, 675 (S.D. Tex. 1999). Petitioner's loss of property privileges and commissary privileges, cell restriction, and reduction in line-class status do not constitute deprivations triggering due process protection.

## Due Process Rights

If a prison inmate has a protected liberty interest in good time credits (*Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 453 (1985); *Hudson v. Johnson*, 242 F.3d 534, 536 (5th Cir. 2001)), then due process requires procedural protections before the inmate can be deprived of a protected liberty interest in those good time credits (*Broussard v. Johnson*, 918 F. Supp. 1040, 1046 (E.D. Tex. 1996)). Reese is eligible for release on mandatory supervision. Because Reese has a liberty interest in his good time, he is entitled to due process. *See Wolff v. McDonnell*, 418 U.S. 539, 556-70 (1974); *Malchi*, 211 F.3d at 958-59.

Due process requires that in prison disciplinary proceedings a prisoner be provided the following:

1. advance written notice of the disciplinary charges (*Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. at 454; *Houser v. Dretke*, 395 F.3d 560, 562 (5th Cir. 2004)) at least twenty-hours before a disciplinary hearing (*Wolff v. McDonnell*, 418

  U.S. 539 (1974));

2.  an opportunity to present evidence (*Houser*, 395 F.3d at 562), including calling witnesses and presenting documentary evidence when consistent with institutional safety and correctional goals (*Ponte v. Real*, 471 U.S. 491, 495 and 499 (1985); *Broussard v. Johnson*, 253 F.3d 874, 876 (5th Cir. 2001));

3.  a written statement in support of the ruling, which statement must be provided by the fact finder and include a statement of the evidence relied on and the reason for the disciplinary action (*Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. at 454; *Houser*, 395 F.3d at 562); and

4.  some assistance in the collection and presentation of evidence if either the inmate is illiterate or the case appears complex (*Wolff*, 418 U.S. at 563-70).

Petitioner claims that he was denied due process during the disciplinary hearings because he was denied the rights to attend his disciplinary hearing, to call witnesses and to present evidence, and to an impartial DHO and that his appointed substitute counsel was ineffective.

*Right to Attend Hearing*

An inmate has no absolute right to attend a prison disciplinary hearing. *See Moody v. Miller*, 864 F.2d 1178, 1180-81 (5th Cir. 1989). In case number 20060196449, counsel substitute Alston initially approached Reese between 4:30 a.m. and 5:00 a.m. on March 24, 2007, to ask him if he wanted to attend his hearing and then returned approximately fifteen or twenty minutes later to again ask him if he wanted to attend the hearing. Respondent contends that Reese was thus twice given the opportunity to attend his hearing.

Petitioner contends that he told substitute counsel Alston that he would attend the hearing but would testify that counsel had not carried out his responsibilities and that Petitioner had requested that counsel not represent him. Petitioner contends that Alston became angry and left.

5

Petitioner contends that he told Officer Roof that Alston would lie and say that Petitioner did not want to attend the hearing. Petitioner contends that Officer Roof said he would take care of it. Petitioner contends that Alston returned to the cell and that Petitioner confronted him regarding his refusal to allow Petitioner to attend the hearing, and that Inmates Bullard and Johnson witnessed the conversation. At the hearing Officer Roof said that Petitioner wanted to attend the hearing, but Alston said that when he went back to talk to Petitioner, he refused to attend. Petitioner contends that the hearing officer should have investigated whether Petitioner refused to attend.

Petitioner attaches an affidavit from Inmate Bullard in which he corroborates Petitioner's contentions. Respondent submitted Alston's affidavit which says that Petitioner told him, "I ain't going nowhere with y'all,"; that Officer Roof came to Alston and said that Reese told him he was not refusing but was saying he was going to represent himself; and that Alston went back upstairs and explained to Reese that because he was in PHD status he could not represent himself. *Alston Affidavit*. Alston's affidavit says that he then asked Reese if he was ready to go to court and he replied, "I already told you that I ain't going nowhere with you." *Alston Affidavit*.

Reese contends that his counsel substitute, M. Alston refused to let him attend after Reese threatened to complain about the quality of Alston's representation. Reese claims that his confrontation with Alston was witnessed by two other inmates. Reese correctly notes that on March 20, 2006 he did indicate that he wanted to attend the hearing. DHR at 1. However, the record also indicates that on March 24, 2006, the hearing date, he refused to attend. DHR at 1.

The record indicates that Reese's hearings in case numbers 20060197735 and 20060199420 were held on March 24, 2006 at 9:35 a.m. and 10:10 a.m., respectively. DHR (7735) at 1; DHR (9420) at 1. He was represented by different counsel at each hearing, by J. Ament in case number

20060197735 and by M. Alston in case number 20060199420.

In his first ground concerning disciplinary case number 20060197735, Reese says that Ament failed to call or ask for his attendance, and in his first ground concerning case number 20060199420, Reese says that Alston denied him the opportunity to attend his hearing by lying about whether Reese refused to attend. *Amended Pet*. at 4-5 and 11-16. Reese correctly notes that on March 20, 2006 he did indicate that he wanted to attend the hearing. DHR (7735) at 7; DHR (9420) at 6. However, the record also indicates that he refused to attend twice saying "I ain't going nowhere." DHR (7735) at 4; DHR (9420) at 3.

While Reese contends that Alston is lying about his refusal, the DHO found that Reese refused to attend. DHR (7735) at 1; DHR (9420) at 1. Absent record evidence, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsubstantiated by anything else contained in the record, to be of probative evidentiary value. *Joseph v. Butler*, 838 F.2d 786, 788 (5th Cir. 1988). The findings of a prison disciplinary hearing will not be disturbed unless they are arbitrary and capricious. *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981). Furthermore, Alston's affidavit contradicts Reese's assertion. The DHO's finding that Reese refused to attend his hearing is not arbitrary or capricious and is fully supported by the record. *See Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (determination not arbitrary or capricious where there is "some evidence" supporting the decision).

The issue of whether Reese would have been entitled to represent himself need not be decided. Reese did not attend the hearing and did not tell the DHO that he wanted to represent himself; consequently, there is nothing for this Court to review regarding whether he was entitled to represent himself.

The issue is whether the DHO's finding that Reese refused to attend is reasonable. The record contains no evidence that Reese requested of the DHO that Reese be allowed to represent himself; consequently, the DHO's finding that Reese refused to attend was reasonable, not arbitrary and capricious. Reese has not shown that he was denied the right to attend his disciplinary hearing; therefore, his claim lacks merit.

*Right to Call Witnesses and Present Evidence*

Reese contends that in case number 20060196449 he was denied the right to call Sergeant Wilson and Officer Warren, who were present during the incident. Reese contends that Officer Warren called the infirmary and that Nurse Smith refused to let Reese go to the infirmary at that time, and that Sergeant Wilson instructed him to return to his cell, take some more medicine, and try to go to the infirmary later. Reese contends that Sergeant Wilson and Officer Warren could have testified that Petitioner turned out for work, complained of pin-like chest pains, dizziness, and feeling sick, and felt that his blood pressure was high. Reese contends that Sergeant Wilson could have testified that he said that the medical staff could not deny Reese medical attention when he complained of those symptoms and that the medical staff was supposed to evaluate him before determining that he could go to work. Reese contends that he wanted to present the blood pressure document and the American Heart Association document at the hearing. Reese contends that the witnesses and documents could have collaborated his story that he did in fact turn out for work, his blood pressure was 174/104, and he complained of feeling increased chances of suffering a heart attack, stroke, and other damage.

The Disciplinary Hearing Record shows that Petitioner did go to the clinic and complained of blood pressure, chest pains, and knee problems, but that he did not appear to be in any distress,

and that the medical staff determined that he was able to turn out for work. The staff noted that his blood pressure was high but that he was non-compliant with his medication and was instructed on the importance of taking it correctly, but he refused to listen. The medical record contradicts Reese's assertion that he was denied medical attention and a medical evaluation. The medical record also indicates that Reese's high blood pressure was due to his non-compliance with prescribed medication.

Regarding his claim concerning the witnesses requested in the hearings in case numbers 20060197735 and 20060199420, Reese, by his own account, indicates that neither witness would have testified that he was denied the "opportunity" to attend his hearing. In short, Reese had the opportunity to attend his hearing and present his evidence. Had he taken the opportunity, he could have not only presented his case but also voiced his dissatisfaction at the hearing. *See* Disciplinary Rules at 13 (right to make statement). He failed to take the one opportunity he had to make a record of his complaints.

Reese says that in case number 20060197735 the witnesses and evidence he wanted to present would have corroborated his reports that he was sick because of high blood pressure and always had problems with his knees swelling and "going out on him." Reese says that in case number 20060197735 he was denied the right to call physician's assistant Mary Randle and "Elledge." *Amended Pet*. at 5-6. Reese says that these two witnesses were relevant to his defense and that their absence denied him the right to present evidence. *Amended Pet*. at 6-7.

Reese says that these two witnesses saw him when he was brought in from the fields on the day of the incident and that he told Ament that he was sick with high blood pressure and was having chest and leg pains, was dizzy, and was feeling sick, and that his leg gave out on him. Reese says

that the two physician's assistants prescribed ibuprofen for him. Reese says that he told Ament that his blood pressure was 250/154 that morning when he was brought in and 190/109 when he had to return later that day to the infirmary. Reese says that he told Ament that he needed to obtain the March 17, 2006, blood pressure reading and that he wanted to present evidence in the form information from the American Heart Association concerning high blood pressure.

Reese says that in case number 20060199420 he was denied the right to call physician's assistant Bennett and inmate Michael Speed. *Amended Pet*. at 18. Reese said both Bennett and Randle would have testified that he had a history of knee problems and that Speed witnessed Reese ask their supervisor to escort him to the infirmary because he felt sick and was having chest and knee pains and that Speed would have testified that he had seen Reese walking with a limp. *Amended Pet*. at 18-19. Reese says that he told Alston that he wanted to present as evidence (1) copies of the sick call slips that he sent in, beginning January 15, 2006, complaining about his knees aching and of one of his legs "going out on him temporarily" and (2) medication passes proving that he was prescribed ibuprofen for his knee pain.

A prisoner's right to call witnesses in a prison disciplinary hearing is far from absolute. *Wolff*, 418 U.S. at 566. The hearing officer may use his discretion when determining what witnesses should be called. *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001). Complaints of uncalled witnesses are not favored in habeas corpus review because allegations of what the witness would have testified to are largely speculative; when the only evidence of a missing witness's testimony is provided by the habeas petitioner, the courts view the claim with great caution. *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). A meritorious claim of uncalled witnesses requires that a habeas petitioner show that the testimony would have been favorable to him and that the

witness would have so testified during the proceeding. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Reese has not shown that in case number 20060196449 the witnesses and documentary evidence would have been favorable to him or that the witnesses would have testified as he has described.

The record indicates that Reese asked for someone in "medical" to attend his hearing in case number 20060197735. DHR (7735) at 7. Nurse J. Ferguson gave a written statement in which he said that Reese appeared healthy even though his blood pressure was up, which was a result of Reese's failure to comply with his prescription medicines. DHR (7735) at 3. Ferguson's statement provides an assessment of Reese's general health. DHR (7735) at 3. Record evidence does not show that Reese was not healthy enough to work or that health issues excused his behavior. DHR (7735) at 1 and 3.

As for Reese's claim concerning disciplinary case number 20060199420, the record indicates that he did not ask for any witnesses. DHR (9420) at 6. Reese was given the opportunity to call and question witnesses and to present evidence but failed to do so.

Testimony he wanted in the record, that he had knee problems, was in the record. DHR (9420) at 6. Consequently, he cannot show that he was prejudiced in any way by the alleged refusal to allow him to call his witnesses. *See Jackson v. Cain*, 864 F.2d 1235, 1251 (5th Cir. 1989). Reese was not denied the opportunity to present witnesses or documentary evidence, and he has not shown that either the testimony of the witnesses or the presentation of the documentary evidence would have affected the outcome of his hearing.

### *Ineffective Substitute Counsel*

Reese contends that the representation he received from Ament and Alston was ineffective.

*Amended Pet*. at 7-10 and 23-27. Reese has no constitutional right to retained or appointed counsel at his hearing. *See Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976). Absent a constitutional right to counsel, there can be no deprivation of the right to effective assistance of counsel. *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *United States v. Palomo*, 80 F.3d 138, 141 n.5 (5th Cir. 1996). Because Reese had no right to counsel at any stage of his disciplinary matter, his ineffective-assistance claims fail as a matter of law.

*Right to an Impartial DHO*

Reese argues that he was denied the right to an impartial DHO in each of the three cases. Reese says the DHO failed to make an independent investigation of whether Reese had in fact actually refused to attend his hearing, after Reese had initially indicated his desire to attend the hearing. Reese says he had a discussion with the DHO, in which he told the DHO that he had a falling out with substitute counsel Alston. According to Reese, the DHO informed Reese that he did not have the right to choose his substitute counsel and also told Reese that he thought Reese was guilty in the upcoming disciplinary cases.

A prison inmate subject to a disciplinary hearing is constitutionally entitled to an impartial hearing officer. *Wolff*, 418 U.S. at 570-71. A hearing officer should not have any pre-existing bias or opinion which would preclude his making a fair, impartial, informed decision. *Morrissey v. Brewer*, 408 U.S. 471, 486 (1972). Due process requires that the hearing officer not be so insufficiently impartial as to present a hazard of arbitrary decision making. *Wolff*, 418 U.S. 571.

First, Reese has failed to establish that his DHO had an independent duty to verify Reese's refusal to attend his hearings. While it is true that prior to his hearing dates Reese had indicated a desire to attend his hearings, there is evidence that on the day of his hearing he refused to attend.

Alston informed the DHO that Reese refused to attend by choice. Second, as to Reese's claim that the DHO was biased against him, Reese does not contend that he was not guilty of either offense. Instead, he contends that he had a medical excuse for his behavior. Reese does not show that the DHO had a bias as to Reese's guilt; the bias would have to be against Reese's medical excuse, an excuse that is contradicted by the record of Reese's physical health and failure to take the medication he had been prescribed. No evidence indicates that the DHO was biased against Reese.

Reese has not shown that he was denied the right to an impartial DHO. Reese has not shown that the DHO or anyone else was biased against him, and has not shown that, if so, the bias played any part in the decision. Reese's claim alleging bias is contradicted by the record.

Reese's good time was taken in compliance with due process requirements. Consequently, he is not entitled to federal habeas corpus relief with respect to the disciplinary cases. Relief should be denied.

## **Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, this Court may *sua sponte* rule on a certificate of appealability because the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court, and further briefing and argument on the very issues the court has just ruled on would be repetitious. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

To obtain a certificate of appealability, a petitioner must make a substantial showing of the

denial of a constitutional right.  *United States v. Webster*, 392 F.3d 787, 791 (5th Cir. 2004); 28 U.S.C. § 2253(c)(2).  The petitioner must demonstrate that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.  *United States v. Webster*, 392 F.3d at 791; 28 U.S.C. § 2253(c)(2).  In determining whether to grant a certificate of appealability, a court is limited to a threshold inquiry into the underlying merit of the petitioner's claims; this threshold inquiry does not require full consideration of the factual and legal bases adduced in support of the claims, but instead is based on an overview of the claims in the habeas petition and a general assessment of their merits.  *Id*.

In cases where a district court rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003), *cert. denied* 540 U.S. 956; *see also Houser v. Dretke*, 395 F.3d 560, 561 (5th Cir. 2004).  In this case, reasonable jurists would not find the district court's assessment of the constitutional claims debatable or wrong.  The Court therefore

**ORDERS** that Respondent's motion to extend time to file an answer is **GRANTED**;

**ORDERS**, **ADJUDGES,** and **DECREES** that this action is **DISMISSED WITH PREJUDICE**;

**ORDERS** that Petitioner is **DENIED** a certificate of appealability; and

**ORDERS** that all motions not previously ruled on are denied.

**So ORDERED and SIGNED this 13th day of August, 2008.**

14   _____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE